Lora Gonzales v. Target Corporation Oral argument not to exceed 15 minutes per side. Mr. Mueller for the appellant. Good morning, Your Honors, and I reserve three minutes for rebuttal. Thank you. Your Honor, this is a straightforward case, a slip and fall case. The entire issue comes down to constructive notice to the defendant, Target Corporation, regarding the presence of the District Court engaged in impermissible fact-finding regarding the quality of the surveillance video in this case. And I just want to make a point. If I don't have the video, I don't have a case. But I do have a video, and I do have a case, and it really comes down to a simple issue of, at 10.31 and 34 seconds, we know that Lora Gonzales fell, and we know that there's water on the floor. Seven minutes earlier, at 10.24, at 22 seconds, the defendant's employee walked by the same area. He says he didn't see any water. So the question is, if water was there, and the defendant and his boss both said if water was there, he should have seen it and he should have done something about it. So all we have to do is analyze the seven minutes in between the fall when no water is there and when he was walking by the same area. The video clearly shows six people walking by, most of whom, whether it's parents and their little kids, with two hands on a cart. Nobody had any water or bottles of water in their hand. So if that's the case, then the only logical inference and really, frankly, the only conclusion you can make is, if nobody spilled in the seven minutes, then the water had to be there. The district judge says the quality of the video wasn't good enough to tell. I watched it about six times. It is difficult to tell when someone's got a bottle of water in their hand. Your Honor, I think it's, frankly, it's pretty clear that you can see when people have two hands on a cart, a gentleman was walking by, you can see his hand swinging, there's no bottle of water. Frankly, district court is a reasonable mind, but reasonable minds can differ, and we are at the summary judgment stage where all inferences have to be in the favor of the plaintiff in this case. I think the video says one thing. I think it was very interesting that Mr. Willmarth, the defense lawyer, in his motions and in oral argument, he didn't make an argument that the video was so poor that you can't tell anything. He's a reasonable mind. Reasonable minds can differ. So at summary judgment stage, it's up to the jury. That normally would be the case, and it's really tempting, I agree with you, to just simply say, show the video to the jury, let them decide. Because you've started out by saying without the video, you lose, right? I don't have an eyewitness, correct. So, clearly, there's a plausible way to look at the video and say there was no water on the floor because it doesn't look like anybody, these ten people, whatever it was, dropped the water, right? But isn't it also plausible that either the person that's only pushing the cart with one hand, it seemed to me there was one other person that could conceivably have dropped the water? So would it be also plausible for a jury to say that you lose because of the video? The jury could say that, but that again is a jury question. But that's what I want to explore with you. So here's what I see at least as a potential problem that I want you to address. Michigan law seems pretty clear from what I can see that if there are two plausible explanations, then you lose in a slip and fall case because there has to be something more than that. So if I'm right about the law, how do you get around that? One, the conjecture that all these cases talk about is there is no eyewitness, there is no video, and we have a plaintiff saying I slipped in water, but they can't go beyond that and say how long the water existed, how long the broccoli existed in the one case that was... Well, they admit the water was there after she fell, right? Correct. And they have to in summary judgment, but in fact... Well, it had to be there on the floor, I guess. It was on the floor and they took a picture of it. Their own people took pictures of it after the fall. So I guess getting back to your question, Judge, it's not a 50-50 choice in this case. The jury can look and come to the exact same conclusion as they had, as I did, in weighing the evidence and determining that nobody spilled anything and therefore it had to have existed. And I guess the point I want to make is if I had an eyewitness, Your Honor, instead of this videotape and the eyewitness came in, the judge would let the eyewitness testify to the seven minutes. I saw six people walk by and nobody spilled anything. And then the witness would be subject to cross-exam. You're too far away. You didn't have a good vantage point. Those are all jury questions. We're at summary judgment here and the judge cannot decide as a matter of law that this video goes one way or the other way. That's up to the jury. You may be right if you phrase it that way and it's possible that the judge may have phrased it incorrectly, but it comes down under Michigan law to the question of are there two plausible explanations for what happened based upon the video? I don't necessarily think it's two plausible explanations. I know you don't think that, but do you concede that there are two plausible explanations from the video given the quality, whatever it is, of the video? I think that reasonable minds can differ. Okay, now if reasonable minds can differ, I realize you want to stay away from my plausible question because that's what Michigan law says. You say, well, geez, none of these cases have videos. Guthrie does. Guthrie is almost exactly on par with this case. It's a case where the person slipped in sand going through the checkout line. There is a video. And basically what the court said is because there are two plausible explanations, the plaintiff's case doesn't arise, is not elevated above conjecture and therefore it doesn't go to the jury. So how do you address Guthrie, which has a video and seems to be almost on all fours here? When we're talking about plausible explanations, we're talking about equally plausible explanations. We're talking about a 50-50. And in this case, the quality of the video isn't such that you can say, well, it's 50-50 as a matter of law. Why not? You look at the video, the post blocks the area where she fell, right? The post somewhat blocks. You can see her fall clearly. You saw her fall. On the video, it seemed to me that the post blocked the area of where she fell, where her feet were when she fell. In other words, just by the post. She fell. You could see her fall, but if you couldn't see her feet... So we don't know what's on the floor from the video, right? Well, we know what's on the floor from her testimony and the pictures is water. And we know that from the testimony that Mr. Pascaretti passed in the exact same area where she fell seven minutes earlier. But he has to concede that she fell based upon water on the floor. That doesn't seem to be an issue at this stage of the case. The question is, how long was it there? That's the question. And so that's why we have to work backwards. So why is it more plausible? You say that you're sort of tentatively buying into my plausibility analysis, but you won't agree that it's equally plausible, right? It isn't equally plausible. I understand that. So if the video quality is not very good, it doesn't mean that the jury couldn't come to different conclusions. I understand that. But if the video quality isn't very good, it's blocked by the post and you can't see what was under her feet when she fell, why is it not equally plausible that the water was deposited by one of these people who went by on the floor after the employee walked through? Because we can tell from the video that nobody who walked by had a bottle of water in their hand. Several people had two hands on their cart. The couple people who did walk by who didn't have a cart, you could see their hands swing and they had nothing in their hands. That's why this is quintessentially a question for the jury and not for the judge at summary judgment. That video quality is not too poor, as the district court said, to discern anything. This is a little off point. What were your client's injuries? She had a torn meniscus and then when she had surgery, as a consequence of the surgery, which is a reasonable consequence, she ended up with an embolism in her lung and had to go back to the hospital and have that taken out. So she had some significant injuries. Is she okay now? She's better. How old is she? She's about 44 right now. You can't settle this? Then I'm back in the district court. I'm a reasonable mind, your honor. I'm happy to engage in settlement, but I think since we're here in Cincinnati, the defendant's not too inclined to do that. Did you go through our mediation program? Yes, that didn't get us very far. Are you willing to try again after the oral argument? I'd be happy to. In fact, I'd be happy to engage with Mr. Wilmarth, who was a friend of mine, in the jury room. If there are any other questions, I don't need any more time. This is simply a question of the judge can't do what she did. This videotape needs to go to the jury, just like an eyewitness wouldn't be disallowed. How much were her specials, did you say? Beg your pardon? How much were her specials? Oh, about, I believe between the two hospitalizations, about $40-some-thousand. Thank you, your honor. Thank you. May it please the court, Mark Wilmarth on behalf of Target. Let me just say two things. First, in the oral argument in front of Judge Botani, I pointed out when the judge asked me, when she pointed out that they do not have good video, I said, I know it's just a long shot and you can't see the actual scene. In fact, where it falls is actually behind a post. And the point that... Who are you quoting there? Myself. Oh, okay. That's a very authoritative source. Yeah, anyway, as Judge McKee pointed out, the place on the floor cannot be seen because it is blocked by a post. We do have a person going through that exact same spot, the young man who was pushing the cart, and there's something in the cart. The plaintiff said that before she fell, she didn't see any water. Her daughter was with her. She didn't see any water. The only evidence that we have in the case is that they saw water afterwards. What plaintiff wants us to do is to say behind that post, there was water there, and it was there for an appreciable long period of time beyond when Mr. Pasqueradi passed through it, but without any evidence to support that. That's what speculative arguments are all about. It's speculation for him to make that argument simply because he has water observed after the accident. That's what Whitmore v. Sears was all about. If you only have the evidence of what the accident is, it doesn't show constructive evidence to the defendant. The only evidence he has is that, and that's what Judge Botani was pointing out in her opinion at the very end, page 7, was that the defendant submitted the testimony from Mr. Pasqueradi that when he fell, he did not see any water. The water was there after she fell. The store people came when she fell, and they saw it there, isn't it? They saw the water after she fell. So somebody spilled water there at some point. At some point. The question is, how long was it there? Right, and there's no evidence to support that. So you look at the video, and you see all these people, seven or eight people going by. Can't the jury judge from their body language whether they spilled water? If they didn't spill water, then it was there when the store employee went by, and either he didn't want to be bothered cleaning it up, or he didn't see it. No, he says he didn't see any water. The body language of the people walking by. He wouldn't be the first witness to tell a little white lie, would he? Because if he did see it, and he didn't do anything about it, he'd probably get fired. Well, that's the point of Conn v. Mandel that we've cited in our brief, is that disbelief in his denial doesn't supply the opposite proposition to be true. I understand that very well, yes. And actually, if you want to look at the video, the body language doesn't show that anybody reacted to anything at all. Well, isn't that for the jury? Well, except for the fact that the point that we have to point out here is, is there water there that was there at the time before Mr. Pasquarelli was there? And there's nothing to suggest that there was. Unless the court has any other questions. Thank you. Thank you. You guys aren't long-winded, anyway. I was going to ask, I'm sorry, what do you think about trying mediation again after the oral argument? I have to be honest with the court. The demand at the time of the summary judgment was extraordinary. The demand when we did mediation of court appeals was the same. And even after circumstances had changed. So I don't, you know, we haven't actually, we haven't talked in the last several months. One of the reasons that I ask is that, if I recall, Target is one of these companies like Kmart and Wal-Mart, and they have these ups and downs. One time they're settling everything, another time they're not settling anything. As judges, you're always curious where they are in that particular cycle. Is Target receptive to what you consider to be reasonable settlement proposals, whatever that means? Well, they make their own decisions, quite honestly. They listen to me, but they make their own decisions. But generally they go by the facts of the case. I mean, yeah, I am really... So is it a waste of time, or isn't it? Given the present circumstance, I think it would be a waste of time. Alright. John, I have three minutes for the record. Plaintiffs are always interested where they are in the cycle, too, in terms of settlement. Frankly, I don't think I have anything to add. If the court has any questions, I'm happy to answer any questions. Otherwise, it's pretty clear, it seems to me. Apparently not. Thank you. Thank you for your presentation. The case is submitted, and you may adjourn court.